UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ALYSSA NICOLE STREMME,

     Plaintiff,

     v.                                                  Case No. 3:25-CV-310 JD

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

## OPINION AND ORDER

Plaintiff Alyssa Stremme applied for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act, alleging disability beginning in May 2017. Her claim was rejected, leading to a review by an Administrative Law Judge ("ALJ") who concluded that Plaintiff was not disabled. The Appeals Council denied her request for review, and Plaintiff now seeks judicial review. For the reasons below, the Court will remand the case to the Social Security Administration for further proceedings.

### A. Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## B. Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## C.  The ALJ's Decision

In finding that Plaintiff was not disabled, the ALJ employed the customary five-step analysis. At step two, he found that Plaintiff suffered from the following severe impairments: "chronic pain syndrome with long term narcotic use since 2002, degenerative changes of the lumbar and cervical spine, and migraines/headaches." (ALJ's Decision, R. at 25.) At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of [a Listing]." (*Id.*) Relevant to Plaintiff's mental well-being, the ALJ found that she has nonsevere impairments of anxiety and depression, which are "treated with commonly prescribed medications through a primary care provider." (ALJ's Decision, R. at 21.)

At the hearing, Plaintiff testified that multiple ailments prevent her from working. She claimed that back problems caused by degenerative disc disease, along with carpal tunnel syndrome in both wrists, limit her ability to lift. (R. at 53.) She said she has problems with her right leg as it's affected by sciatica. According to Plaintiff, it is difficult for her do dishes or laundry and, on a bad day, she can't shower as she can't lift up her arms. (R. at 53–54.) She said she experiences sudden, sharp, and shooting pain if she bends over and tries to stand up. (R. at 54.) Plaintiff told the ALJ that she can sit for 20 to 30 minutes before she needs to stand up, stretch, and move. She can stay standing for about 20 top 30 minutes, after which she has sit down.

Plaintiff further testified that she has struggled with anxiety for some time and has experienced panic attacks. (R. at 64–65.) She gets anxious if she is around a lot of people, even her own family. (R. at 65.) She feels that her anxiety and depression have been building up since she's no longer able to run or draw. (R. at 77–78.)

In determining Plaintiff's residual functional capacity ("RFC"),[1] the ALJ found that Plaintiff's allegations concerning the severity of her symptoms is inconsistent with the longitudinal record (ALJ's Decision, R. at 27) and with significant portions of her own testimony (*id*. at 28).

The ALJ also considered consultative examiner Dr. Parker's opinion following two examinations about eight months apart (December 2022 and August 2023). The ALJ found them unpersuasive as they largely consisted of copying and pasting Plaintiff's chief complaints. (ALJ's Decision, R. at 32.) Further, according to the ALJ, the opinions lacked support in Dr. Parker's own examination and were out of step with the remainder of the record. As the ALJ observed, after years of largely normal physical and mental examinations, Plaintiff now "portrayed deficits" in those areas. (*Id*., R. at 33.) Similarly, the ALJ found that the imaging reports over the years failed to reveal any serious deformities or worsening of Plaintiff's condition, thus contradicting Dr. Parker's opinions.

In reviewing the state agency medical consultants' prior administrative findings, the ALJ disagreed with their conclusions that Plaintiff could perform medium work. The ALJ reasoned that, out of abundance of caution, Plaintiff needed stricter limitations given that the spine imaging confirms some degenerative changes and Plaintiff testified that she has constant sciatic pain. (*Id*. at 36.)

As for the state agency psychological consultants, the ALJ determined that their paragraph B limitations were excessive. The consultants found that Plaintiff was moderately

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

limited in each paragraph B criteria, but the ALJ determined that the longitudinal evidence

supported only mild limitations in understanding, remembering, or applying information;

interacting with others; and concentrating, persisting, or maintaining pace; and no limitations in

adapting or managing herself. (*Id.*, R. at 22.) According to the ALJ, the consultants findings are

flawed because they relied on the opinion of the psychological consultative examiner whose

"clinical findings and opinions are largely inconsistent with the longitudinal clinical findings."

(*Id.*)

> The ALJ concluded that Plaintiff has the RFC to perform
>
> light work[2] . . . except the claimant is limited to lifting, carrying, pushing and pulling 10 pounds frequently and 20 pounds occasionally. The claimant can sit for six hours in an eight hour work day and can stand and/or walk for six hours in an eight hour work day. The claimant should not climb ropes, ladders or scaffolds. The claimant can occasionally kneel, crouch, and crawl. The claimant can occasionally bend and stoop. The claimant can occasionally use ramps and stairs. The claimant can perform the balance required of such activities. The claimant should not perform work at exposed heights and open and dangerous machinery such as those with fast moving and exposed blades and open flames. The claimant is limited from concentrated exposure to excessive airborne particulate, dusts, fumes and gases and excessive heat, humidity and cold such as when working outside or within a sawmill, boiler room, chemical plant, green house, refrigerator unit or sewage plant. The claimant should avoid work within close proximity to very loud noises (level 5) such as a fire alarm more than occasionally.

(*Id.*, R. at 27.)

The ALJ posed several hypothetical questions to the vocational expert ("VE") based on

her RFC findings. The VE testified that a person with Plaintiff's RFC would be able to perform

her past relevant work as home health worker. (R. at 80.) The ALJ accepted the VE's testimony,

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

finding that Plaintiff "is able to perform [past relevant work] as actually performed, at light exertion, but not as the occupation is generally performed, at medium exertion." (ALJ's Decision, R. at 37.)

## D.  Discussion

In her appeal, Plaintiff raises three main arguments. First, Plaintiff contends that the ALJ's subjective symptoms analysis was patently wrong because he improperly overlooked, mischaracterized, and rejected evidence that supports Plaintiff's testimony.

Second, Plaintiff points out that the ALJ rejected all medical opinions concerning her mental and physical functioning limitations. According to Plaintiff, this means that the ALJ based her RFC assessment on his own lay interpretation of the medical evidence, which is impermissible under the regulations.

Finally, Plaintiff argues that the ALJ erroneously found that she had no limitations in her ability to adapt and manage herself,[3] and only mild limitations in interacting with others[4] and in concentration, persistence, or pace.[5] Plaintiff also contends that, in any case, the ALJ failed to account for her mental functioning limitations in the RFC.

---

[3] Adapting or managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(4).

[4] Interacting with others "refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include: cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(2).

[5] Concentration, persistence, and pace refer "to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that [the claimant] understand[s] and

The Court will discuss Plaintiff's last argument only as it warrants remand.

**(1) *Plaintiff's Mental Functioning***

"The RFC finding is central to the outcome of a Social Security case." *Holiday v. O'Malley*, No. 2:23-CV-302, 2024 WL 2860088, at *3 (N.D. Ind. June 5, 2024). "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."). "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id.* Although the ALJ need not use special terminology, the Court cannot "assume that the VE is apprised of such limitations unless she has independently reviewed the medical record." *Id.*

> Before formulating the RFC, at step two, the ALJ utilizes a special technique called the psychiatric review technique ("PRT") to determine the severity of any mental limitations. 20 C.F.R. § 404.1520a. Using the PRT, the ALJ assesses the claimant's function in four categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* Although the ALJ's step two analysis is not an RFC finding, SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *4, if an ALJ finds mental impairments at step two, these should then be "reflected as limitations in the RFC finding." *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, . . . the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."); *Paar v. Astrue*, No. 09 C 5169, 2012 U.S. Dist. LEXIS 4948, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17,

---

know[s] how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(E)(3).

2012) (finding ALJ erred in not including mild mental limitations he found at step two in his RFC analysis).

*Judy M. v. Kijakazi*, 658 F. Supp. 3d 596, 602 (N.D. Ill. 2023). After all, adequate functional mental capacity is required for competitive employment:

> To do a work-related task, you must be able to understand and remember and apply information required by the task. Similarly, you must be able to concentrate and persist and maintain pace in order to complete the task, and adapt and manage yourself in the workplace. Limitation in any one of these parts (understand or remember or apply; concentrate or persist or maintain pace; adapt or manage oneself) may prevent you from completing a work-related task.

*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(f)(i).

In addition, "an ALJ 'must provide a logical bridge between the evidence and [her] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). That's a shorthand term for the requirement "that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). "That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it." *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). "We review the ALJ's decision holistically to determine whether the ALJ grappled with evidence favorable to the claimant, but we will not reconsider facts, reweigh evidence, or resolve conflicts." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (citations omitted).

* * * * *

Contrary to Plaintiff's claims, the ALJ properly explained why he found that Plaintiff was only mildly limited in her abilities to interact with others and had no limitations in adapting or managing herself. In relation to Plaintiff's ability to interact with others, the ALJ noted that, although Plaintiff testified that she has difficulties being around a lot of people, even members of her own family, she also stated that Xanax keeps her calm and she feels more comfortable around people. (ALJ's Decision, R. at 22.) The ALJ also observed that, before Xanax, Plaintiff would sweat, her voice would tremble, her hands would shake, her stomach would become upset, and she would leave the situation (*see id.*), but there were no indications during the psychological consultative examinations that new environments aggravated Plaintiff's social anxiety (*see id.*, R. at 23). In other words, the ALJ found that Plaintiff's ability to interact with others is mildly limited because her social anxiety is largely controlled by medication, and Plaintiff has not shown that such an assessment is patently wrong.

In the same discussion and largely for the same reasons, the ALJ found that Xanax enabled Plaintiff to adapt and manage herself without any limitations: "contrary to the claimant's testimony that before Xanax she would leave the situation—her primary care provider's almost monthly treatment records from 2021 and 2022 reveal that even without Xanax, the claimant managed herself in public, attended her appointments, and adapted to an environment outside of her home." (ALJ's Decision, R. at 23.) While Plaintiff points to her testimony at the hearing about her social anxiety and difficulty handling stress, the ALJ did not ignore these allegations. Rather, he considered and discounted them to the dismay of Plaintiff, but without violating any regulations. In other words, Plaintiff has failed to show that the ALJ improperly found that she has no limitations in adapting and managing herself.

Next, the ALJ considered Plaintiff's CPP limitations, but failed to provide his rationale how he arrived at his decision that she suffered mild CPP limitations. The ALJ reasoned that, although the state agency psychological consultants found moderate CPP limitations, their findings were based on the psychological consultative examiner's opinion, which the ALJ considered an outlier in light of the longitudinal record. But the actual explanation provided by the ALJ is tenuous. Among other things, the psychological consultative examiner stated that Plaintiff's "cognitive processing speed was a 'bit slowed, that she had 'profound' concentration disruption issues, and she had the ability to sustain focus on reading material for about 30 minutes at a time." (ALJ's Decision, R. at 22.) Yet according to the ALJ, treatment records from May 2017 and July 2021 through December 2022, as well as the August 2023 physical consultative examiner's observations show that Plaintiff was alert (*id*., R. at 24), and that "during the December 2022 and August 20203 physical consultative examinations, the examiner consistently recorded that the claimant answered all questions." (*Id*.) The ALJ pointed out that "there is not documentation of clinical findings of abnormal functioning or deficits in mood, affect, concentration, pacing, persistence, focus, attention, acquisition of information, comprehension, memory, application of learned information, social interaction, thought processing, thought content, psychomotor behavior, speech, communication, personal care, adaptation, etc." (ALJ's Decision, R. at 31.) While the Court accords great deference to the ALJ's findings, it may not rubber-stamp them, and the ALJ must build a logical bridge between the evidence and his conclusions. Missing here is any explanation from the ALJ how Plaintiff's being alert at the medical appointments and answering all of the consultant's questions impacts her CPP limitations. Beyond using boilerplate statements that the facts do not reflect greater limitations of function that those set in the RFC, the ALJ does not address how long and how

consistently she can work and whether she is able to sustain tasks on a regular and continuing basis.

A corollary to the ALJ's shorthand treatment of the CPP limitations is that that ALJ failed to account for them in the RFC. An ALJ must incorporate into the RFC all restrictions caused by the plaintiff's limitations, including nonsevere impairments and mild limitations, or explain why the limitations do not warrant a restriction. *See Patricia A.G. v. Kijakazi*, No. 21 C 5573, 2023 WL 2683470, at *4 (N.D. Ill. Mar. 29, 2023) ("The ALJ was obligated to explain either how the RFC 'incorporate[d] restrictions caused by Claimant's mild mental limitations,' or, alternatively, why 'the ALJ believed that the mild mental limitations did not merit a non-exertional limitation in the RFC.'" (quoting *Viviana R. v. Kijakazi*, No. 19-CV-07419, 2022 WL 3354840, at *5 (N.D. Ill. Aug. 12, 2022)). Yet the ALJ did neither. What's more, as explained below, the same problem is present in relation to the ALJ's finding that Plaintiff has mild limitation in her ability to interact with others.

The RFC sets out Plaintiff's exertional and non-exertional limitations. Among the latter are her postural restrictions (e.g., climbing, kneeling, crawling, bending) and environmental restrictions (e.g., avoidance of fumes, heat, dust, very loud noises) aimed at accommodating Plaintiff's allegations of back issues and COPD, and preventing migraines. (*See* ALJ's Decision, R. at 36.) At the same time, the RFC assesses no mental limitations and, in particular, no restrictions concerning Plaintiff's ability to interact with others and to concentrate, persist, or maintain pace. Perhaps the ALJ believed that no accommodations were necessary because they did not affect Plaintiff's work functionality, *see* 20 C.F.R. § 404.1545 ("Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting."), but he did not say so, and the Court may not read such a

conclusion into his decision. *See Alonzo S. v. O'Malley*, 757 F. Supp. 3d 822, 827–28 (N.D. Ill. 2024) ("Presumably, the ALJ did not think that Claimant's mild limitation would significantly impact his ability to function in a job, but the ALJ did not say that or explain why that was the case, and the Court cannot, and will not, speculate about what was in the ALJ's mind. That is clear error on this record."). After all, even though the ALJ did not accept the findings of the state agency psychological consultants that Plaintiff's limitations were moderate, he nevertheless found mild limitations in interacting with others and CPP. Although mild, those limitations still require consideration because mild limitations do not necessarily eliminate the need for corresponding RFC restrictions. *See Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017) ("While a mild, or even a moderate, limitation in an area of mental functioning does not necessarily prevent an individual from securing gainful employment, the ALJ must still affirmatively evaluate the effect such mild limitations have on the claimant's RFC.") (citation omitted). Omitting the restrictions without any explanation constitutes a reversible error. *See Karen A. v. Kijakazi*, No. 1:21-CV-3076, 2023 WL 2643235, at *5 (S.D. Ind. Mar. 27, 2023) ("Courts have consistently found that an ALJ errs by failing to account for mild mental limitations resulting from a claimant's mental impairment when assessing the individual's mental RFC.") (collecting cases). Contributing to the error is the ALJ's failure to explain which specific limitations Plaintiff experienced in relation to CPP.

While the ALJ referred to Plaintiff's ability to concentrate and interact with others in several sections of his decision, these references relate to his belief that her mental functioning in these areas is not as limited as found by the state agency psychological consultants or as claimed by Plaintiff's niece. For example, the ALJ observed that "the clinical findings do not describe ongoing concentration, attention, or memory deficient that consistently interfered with [her]

ability to focus during her appointments, discuss her medical history, or remember how and when to take her multiple medications." (ALJ's Decision, R. at 23.) The ALJ also determined that Xanax helps Plaintiff with social interactions: "the claimant is only mildly limited with interacting with others . . . ." (*Id.*, R. at 23.) But, as noted earlier, the ALJ does not correlate any specific limitations with his finding of mild mental functioning limitations, nor does he extend his discussion to Plaintiff's ability to work full time. And although the ALJ states that he "fully considered the effects of the claimant's nonsevere disorders when assessing [Plaintiff's] residual functional capacity," and that "the minimal, and sometimes temporary effects of these disorders are not greater than the limitations described in [the RFC]" (*id.*, R. at 25), there's no actual explanation what that consideration entailed and why Plaintiff's mental functioning limitations in question were not accommodated in the RFC. The ALJ ultimately points only to physical exertional and nonexertional limitations as they relate to Plaintiff's strength, back pain, COPD, and migraines. He provides no substantive explanation by which the Court could follow, upon review, his path of reasoning as to why no accommodations are necessary for Plaintiff's moderate limitations in CPP and interacting with others. On remand, the ALJ should identify Plaintiff's mental functioning limitations with greater specificity as that would shed clarity, indicating what, if any corresponding restrictions must be assessed in the RFC.

The Commissioner also accuses the ALJ of shifting burden of proof from himself to the Commissioner. The Commissioner claims that "[i]t is not the ALJ's responsibility to go through each possible RFC restriction and explain why it is or is not required." (Def.'s Resp. Br., DE 19 at 9–10.) But the Commissioner's argument misrepresents the reality. Plaintiff's burden to produce evidence supporting her disability claims remains unchanged, and the ALJ need not opine about every possible limitation. Rather, having determined that sufficient evidence existed

14

to find mild mental functioning limitations, the ALJ either had to account for them in the RFC or explain why the limitations did not warrant additional restrictions. This requirement does not shift Plaintiff's burden of proof to the ALJ. *See Judy M. v. Kijakazi*, 658 F. Supp. 3d 596, 603 (N.D. Ill. 2023) ("The Commissioner is correct that [the plaintiff] bears the burden of producing evidence that supports her DIB claims. But the ALJ already determined at step two that [the plaintiff] had provided sufficient evidence to show mild mental functioning limitations in three of the four PRT categories. The issue here is whether the ALJ accounted for those limitations in his RFC assessment. Because the Court cannot sufficiently determine that the ALJ did so, the Court remands this case to the SSA.") (citations omitted).

While an RFC determination is subject to harmless error, an error is harmless if, upon examination of the record, the reviewing Court can "predict with great confidence what the result of the remand will be." *Wilder* v. Kijakazi, 22 F.4th 644, 654 (7th Cir. 2022). Yet the Court cannot reach such a conclusion here because of ambiguities in how the ALJ assessed the RFC. Accordingly, the Court will remand this case.

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: May 21, 2026

> _____/s/ JON E. DEGUILIO_____
> Judge
> United States District Court